UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────

LUIS E. MARTINEZ REYES,

                              Plaintiff,

              -vs-                                        14-CV-734-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

───────────────────────────────────────

APPEARANCES:   LEWIS L. SCHWARTZ, PLLC (LEWIS L. SCHWARTZ, ESQ., of
               Counsel), Buffalo, New York, for Plaintiff

               WILLIAM J. HOCHUL, JR., United States Attorney (SANDRA M.
               GROSSFELD, Special Assistant United States Attorney, of Counsel),
               Buffalo, New York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated October 8, 2015 (Item

16).

        Plaintiff Luis E. Martinez Reyes initiated this action on September 3, 2014, pursuant

to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's

application for Social Security Disability Insurance ("SSDI") and Supplemental Security

Income ("SSI") benefits under Title II and Title XVI of the Act, respectively.  Both parties

have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure (*see* Items 8, 14).  For the following reasons, plaintiff's motion is denied,

and the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on April 20, 1964 (Tr. 138).[1] He graduated from high school, and obtained a bachelor's degree in public communication in 1987 (Tr. 33). Plaintiff had past relevant work as an auditor and shipping clerk in a warehouse (Tr. 34, 35).

Plaintiff protectively filed applications for SSDI and SSI on May 8, 2011, alleging disability since September 7, 2010 due to anxiety, depression, and HIV (Tr. 138-44; 149). The applications were denied administratively on January 23, 2012 (Tr. 80-82). Plaintiff requested a hearing, which was held on March 21, 2013, before Administrative Law Judge ("ALJ") Timothy M. McGuan (Tr. 30-72). Plaintiff appeared and testified at the hearing, and was represented by counsel. Plaintiff's partner Jeffrey Wilson and Vocational Expert ("VE") Josiah L. Pearson also testified.

On April 12, 2013, the ALJ issued a decision finding that plaintiff was not disabled under the Act (Tr. 7-25). Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Titles II and XVI (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date, and at steps two and three, that plaintiff's "severe" impairments (identified as bipolar, anxiety and personality disorders), considered singly and in combination, did not meet or equal the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), with specific consideration given to the criteria for Listings 12.04 (*Affective Disorders*) and 12.06

---

[1] Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 6).

(*Anxiety Related Disorders*) (Tr. 14-15).  The ALJ also considered the criteria for Listing 14.08 (*Human immunodeficiency virus (HIV) infection*), but found no confirming documentation or manifestation of HIV infection as required under sections 14.00F and 14.08A-K (Tr. 13-14).

The ALJ then discussed the evidence in the record regarding the limitations caused by plaintiff's mental impairments, considering the hearing testimony, objective medical evidence, and opinions from treating and consultative medical sources (Tr. 15-20), and determined that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but was limited to simple work with only occasional interaction with the public, co-workers and supervisors (Tr. 15).   In making this assessment, the ALJ discussed the hearing testimony concerning plaintiff's symptoms, including panic attacks, anxiety, aggression, anger management issues, and suicidal tendencies (Tr. 15-16).   The ALJ found that, while plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, his testimony and statements about the intensity, persistence and limiting effects of these symptoms were "not entirely credible" for several reasons, including intermittent compliance with mental health treatment; noted improvement when taking medications and exercising; and lack of medical source evidence indicating any assessed limitations that would preclude all work (Tr. 16-20).

With regard to medical source opinion evidence, the ALJ gave "significant weight" (Tr. 18) to the medical source statement of consultative examining physician Dr. Donna Miller, D.O., who conducted an internal medicine examination of plaintiff on January 12, 2012, and found "no significant physical limitations" (Tr. 291).   The ALJ also gave

significant weight to the medical source statement of consultative examining psychologist

Thomas Ryan, Ph.D., who conducted a psychiatric evaluation of plaintiff on January 12,

2012, and found as follows:

> He demonstrates no limitations in the ability to follow and understand simple
> directions, perform simple tasks, maintain attention and concentration,
> maintain a regular schedule, and learn new tasks.  He may have moderate
> limitations in the ability to perform complex tasks, mild limitation in making
> appropriate decisions, and moderate limitation in the ability to relate
> adequately with others and deal with stress.

(Tr. 287-88).  The ALJ accorded "great weight" (Tr. 19) to the assessment of state agency

review psychiatrist J. Echevarria that, based on the objective medical evidence and self-

reported activities of daily living, plaintiff "should be able to perform work in a low stress

environment" (Tr. 305).

At step four, the ALJ found that plaintiff could not perform any of his past relevant

work (Tr. 20).  Considering plaintiff's age (46 on the alleged onset date), education, work

experience, and RFC, and relying on the testimony of the VE regarding the extent to which

plaintiff's assessed nonexertional limitations could be expected to erode the occupational

base of unskilled work at all exertional levels, the ALJ determined that plaintiff was capable

of making a successful adjustment to other work that exists in significant numbers in the

national economy (Tr. 20-21).  Accordingly, the ALJ found that plaintiff was not disabled

within the meaning of the Act from the alleged onset date through the date of decision (Tr.

21).  This decision became the Commissioner's final determination when the Appeals

Council denied plaintiff's request for review on August 15, 2014 (Tr. 1-6), and this action

followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ (1) failed to properly assess plaintiff's credibility, (2) failed to properly account for plaintiff's functional limitations due to stress, and (3) selectively adopted only those portions of the consultative examining psychologist's and state agency review psychiatrist's opinions that supported the ALJ's conclusions   *See* Items 8-1, 15.   The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and based on substantial evidence.  *See* Item 14-1.

## DISCUSSION

### I.   Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …."   42 U.S.C.  §  405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings

for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).  Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the

question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.    Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C.

§ 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and

RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' "  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.    Plaintiff's Motion

### A.    Credibility

Plaintiff contends that the ALJ failed to fully and properly assess plaintiff's credibility, as required under the Social Security regulations and rulings.  The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements

about the claimant's impairments when there is conflicting evidence about the extent of

pain, limitations of function, or other symptoms alleged.  *See Paries v. Colvin*, 2013 WL

4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir.

1999)).  The Commissioner has established a two-step process to evaluate a claimant's

testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically
> determinable impairment which could reasonably be expected to produce the
> pain or symptoms alleged by the claimant.  Second, if the ALJ determines
> that the claimant is impaired, he then must evaluate the intensity,
> persistence, and limiting effects of the claimant's symptoms.  If the claimant's
> statements about his symptoms are not substantiated by objective medical
> evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v.

Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. §§ 404.1529, 416.929.

The Regulations outline the following factors to be considered by the ALJ in

conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration,

frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type,

dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5)

any treatment, other than medication, that the claimant has received; (6) any other

measures that the claimant employs to relieve the pain; and (7) other factors concerning

the claimant's functional limitations and restrictions as a result of the pain.  20 C.F.R.

§§ 404.1529(c)(3)(i)–(vii), 416.929(c)(3)(i)–(vii); *see Meadors v. Astrue*, 370 F. App'x 179,

184 n. 1 (2d Cir. 2010).  The Commissioner's policy interpretation ruling on this process

provides the following further guidance:

> The finding on the credibility of the individual's statements cannot be based
> on an intangible or intuitive notion about an individual's credibility.  The
> reasons for the credibility finding must be grounded in the evidence and

articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the court's review of the ALJ's determination in light of the record as a whole reveals that the ALJ's credibility assessment was performed in accordance with this guidance.  The ALJ noted plaintiff's testimony about the limiting effects of his anxiety, depression, and positive HIV status, including inability to concentrate, fatigue, aggression towards co-workers, and suicidal tendencies (Tr. 15-16).  The ALJ then discussed the extensive treatment notes in the record indicating that plaintiff was hospitalized at Erie County Medical Center ("ECMC") for inpatient psychiatric care on three occasions during the period from September 2010 through July 2011, and subsequently received outpatient mental health counseling and treatment at various facilities (*see* Tr. 16-20).  The ALJ noted that this evidence reflected certain inconsistencies between plaintiff's testimony and his statements to medical sources, as well as noncompliance with prescribed medications, intermittent mental health treatment, and significant medical improvement with proper treatment and exercise (Tr. 10-20).  Relying on this record, along with the absence of any treating or examining source assessment of functional limitations that would preclude the performance of all work-related activity, the ALJ found that while plaintiff's medically determinable mental impairments could reasonably be expected to produce the symptoms

alleged, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible (Tr. 16, 20).

In the court's view, this credibility finding is sufficiently grounded in the evidence and specific enough to make clear to plaintiff, to this court, and to any subsequent reviewers the weight the ALJ gave to plaintiff's statements about the limiting effects of his symptoms, and the reasons for that weight. As such, and upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case complies with the requirements of the Act, the implementing regulations and SSA rulings, and the weight of controlling Second Circuit authority. Accordingly, plaintiff is not entitled to reversal or remand on this ground.

### B.      Assessment of Stress-related Functional Limitations

Plaintiff next contends that the Commissioner's determination should be reversed because the ALJ's RFC assessment failed to adequately account for plaintiff's stress-related functional limitations. This contention is also rejected.

Pursuant to the Commissioner's policy guidance, when determining whether mentally impaired individuals will be able to adapt to the stress-related demands of the workplace, the ALJ is required to make a thorough, individualized RFC evaluation, focusing on the individual's ability "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Social Security Ruling (SSR) 85–15, 1985 WL 56857, at *4, 5 (S.S.A.1985); *Petrie v. Astrue*, 2010 WL 1063836, at *2 (N.D.N.Y. Mar. 19,

2010), *aff'd*, 412 F. App'x 401 (2d Cir. 2011).  The court's review of the ALJ's RFC assessment in this case reflects adequate compliance with the Commissioner's guidance.

In making the determination that plaintiff's capacity for work at all exertional levels is limited to simple work with only occasional interaction with the public, co-workers and supervisors, the ALJ clearly placed strong reliance on the consultative findings of Dr. Ryan and Dr. Echevarria, both of whom explicitly noted their consideration of stress as a factor affecting plaintiff's return to the workplace.  For example, reporting on the results of his psychiatric evaluation of plaintiff, Dr. Ryan found "no limitations in [plaintiff's] ability to follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, and learn new tasks" (Tr. 287), and "moderate limitations in the ability to perform complex tasks, mild limitation in making appropriate decisions, and moderate limitation in the ability to relate adequately with others and deal with stress" (Tr. 288).  Upon review of the medical evidence and hearing testimony, Dr. Echevarria found that plaintiff "should be able to perform work in a low stress environment" (Tr. 305).  In the court's view, although the ALJ did not specifically include stress limitations in his RFC assessment, his reliance on the findings and observations of the consultative medical sources in terms of their consideration of plaintiff's stress-related functional limitations, as well as his comprehensive consideration of the hearing testimony, objective medical evidence, and treating and consultative medical source opinions, represents the kind of thorough, individualized mental RFC evaluation contemplated by SSR 85-15 and the overall requirements of the Social Security regulations and rulings.

Accordingly, plaintiff is not entitled to reversal or remand on the ground that ALJ failed to properly assess stress-related functional limitations.

**C.     Selective Adoption of Portions of Medical Source Opinions**

Finally, plaintiff argues that the matter must be remanded because the ALJ selectively adopted only those portions of the consultative medical sources' opinions that supported his RFC assessment. *Cf. Gecevic v. Secretary of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995) ("While the ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, he cannot simply selectively choose evidence in the record that supports his conclusions.") (internal quotation marks and citations omitted).  According to plaintiff, the ALJ gave significant weight to both Dr. Ryan's and Dr. Echevarria's opinions, but did not include any of their stress limitations in his RFC evaluation.

The court has already addressed this argument, and rejected it.  As discussed in the immediately preceding section, the ALJ's RFC assessment in this case reflects adequate consideration of plaintiff's stress-related limitations in accordance with the requirements of the regulations, administrative rulings, and case law, and is set forth "with sufficient specificity to enable the court to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *see also Fairbank v. Colvin*, 2015 WL 3937185, at *6 (W.D.N.Y. June 26, 2015).  Accordingly, plaintiff is not entitled to reversal of the Commissioner's determination, or remand for further proceedings, on the ground that the ALJ selectively adopted portions of the medical source opinion evidence.

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision in this case was reached upon proper application of appropriate legal standards, and is supported by substantial evidence.  Therefore, the Commissioner's final determination must be upheld.

Plaintiff's motion for judgment on the pleadings (Item 8) is denied, and the Commissioner's motion for judgment on the pleadings (Item 14) is granted.  The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated:   December 29, 2015
p:\pending\2014\14-734.ssdi.si.dec2.2015